UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDMOND MAYNOR,

            Petitioner,

   v.

RON HAYNES,

            Respondent.

CASE NO. C20-1181-BHS-MAT

REPORT AND RECOMMENDATION

## INTRODUCTION

Petitioner Edmond Maynor proceeds pro se and *in forma pauperis* in this 28 U.S.C. § 2254 habeas corpus matter. He is in custody pursuant to a King County Superior Court judgment and sentence entered for his convictions for robbery and assault in the first degree. (Dkt. 10, Ex. 1.)

Petitioner raises two grounds for relief in his habeas petition. (Dkt. 4.) Respondent submitted an answer, along with relevant portions of the state court record (Dkts. 9-10), and petitioner responded to the answer (Dkt. 12). Now, having considered the petition and documents submitted in support and opposition, the Court recommends the habeas petition be DENIED and this case DISMISSED.

REPORT AND RECOMMENDATION
PAGE - 1

# BACKGROUND

The Washington Court of Appeals summarized the facts underlying petitioner's conviction and described the original judgment and sentence as follows:

> On September 21, 2012, Maynor entered Westlake Center in downtown Seattle and went into the Express Jewelry store. He was wearing a mask, sunglasses, and a hat. Maynor approached the counter and told Tu Huynh, the only employee in the store, that he was looking for a diamond engagement ring priced at $7,000 to $15,000. Huynh responded that the store did not carry such expensive jewelry, but had a $5,000 engagement ring. He then took a ring out of a tray of about 18 other rings and showed it to Maynor.
>
> At this point, Maynor pulled out a gun, pointed it at Huynh, and demanded the whole tray of rings. Maynor told Huynh he would shoot him if he did not give him the tray. When Huynh pulled out the tray, Maynor grabbed it and ran. After running just a few steps, Maynor stopped, turned around, and shot at Huynh. The bullet nearly struck Huynh, tearing a hole in his shirt sleeve. The bullet continued through the wall and into the back of the neighboring store, nearly hitting the store manager.
>
> Maynor fled. Huynh chased him through the mall until they reached the stairs to the Fourth Avenue entrance. Maynor jumped down the stairs and fell, but got up with the gun in his hand, pointed it at Huynh, and fired two more shots. Huynh ducked and avoided being struck by the bullets.
>
> Roberto Sandoval, a bell [captain] at a nearby hotel, saw Maynor running down the street in a mask. Sandoval chased Maynor and pushed him. Maynor tried to hit Sandoval, but Sandoval pushed him down. Maynor then pulled out the gun and pointed it at Sandoval. Sandoval threw himself down on Maynor and began fighting for the gun. Three shots were fired, and one bullet struck Sandoval's right hand and arm. Sandoval continued to try to grab the gun, and Maynor hit him three times on the head with it. Sandoval yelled for help, and the gun was thrown out of reach. Several bystanders came to his aid, including a U.S. Marshal, who handcuffed Maynor and waited for Seattle police.
>
> Seattle police arrived and took Maynor into custody. On the ground near the scene, police recovered the handgun, mask, sunglasses, and a small purse. Inside the purse was a notebook containing what appeared to be Maynor's robbery plans.
>
> The State charged Maynor with one count of first degree robbery, alleged to have been committed with a deadly weapon, and three counts of first degree assault (two counts involving Huynh and one count involving Sandoval). Maynor testified and admitted to firing one shot in the store, but claimed that he did not

intend to hurt Huynh and was only trying to scare him into letting go of the jewelry. He also admitted to firing additional shots at Huynh while fleeing, but claimed he was only trying to keep Huynh from following him. Finally, Maynor admitted that his gun discharged three times during his struggle with Sandoval, but claimed he did not purposely shoot the gun.

The jury found Maynor guilty of first degree robbery, two counts of first degree assault (one count involving Huynh and one count involving Sandoval), and one count of the lesser included offense of second degree assault (on the other assault count involving Huynh). By special verdict, the jury also found that Maynor was armed with a firearm on each count. The court sentenced Maynor to 474 months of confinement.

(Dkt. 10, Ex. 2 at 2-3; *see also id.*, Ex. 3.)

Petitioner appealed, arguing the counts for robbery and second degree assault violated the Fifth Amendment prohibition on double jeopardy, abuse of discretion in the denial of a motion for mistrial, and ineffective assistance of counsel. (*Id.*, Ex. 4.) The Washington Court of Appeals affirmed the convictions for robbery and first degree assault, reversed the conviction for second degree assault because the crime merged with the robbery, and remanded the matter for resentencing. (*Id.*, Ex. 2.) Petitioner did not seek review by the Washington Supreme Court and the Court of Appeals issued the mandate on December 11, 2015. (*Id.*, Ex. 7.)

The superior court resentenced petitioner in April 2016 to a total of 327 months of confinement. (*Id.*, Ex. 1.) In October 2016, by separate order, the court increased the amount of restitution. (*Id.*, Ex. 8.) Petitioner appealed, with counsel, arguing the sentencing court exceeded the scope of the mandate by holding a new restitution hearing and increasing the amount ordered. (*Id.*, Ex. 9.) Respondent conceded the amount of restitution should not have been increased. (*Id.*, Ex. 10.) Petitioner sought to proceed pro se and raise additional grounds for review. (*Id.*, Ex. 11.) By Notation Ruling in August 2017, the Commissioner of the Court of Appeals denied the motion to proceed pro se, but provided for petitioner's ability to submit an additional statement of grounds

REPORT AND RECOMMENDATION
PAGE - 3

for review. (*Id*., Ex. 12.) Petitioner filed the additional statement, arguing ineffective assistance of counsel during trial and error at re-sentencing. (*Id*., Ex. 13.)

On February 12, 2018, the Washington Court of Appeals affirmed the judgment and sentence, but remanded for the superior court to reinstate the original amount of restitution. (*Id*., Ex. 14.) Petitioner sought reconsideration, which the Court of Appeals denied on March 16, 2018. (*Id*., Exs. 15-16.) Petitioner did not seek review by the Washington Supreme Court, and the state court issued the mandate on May 4, 2018. (*Id*., Ex. 17.)

Petitioner filed a personal restraint petition on March 14, 2019, with claims of ineffective assistance of trial and appellate counsel and prosecutorial misconduct. (*Id*., Ex. 18.) The Washington Court of Appeals denied the petition. (*Id*., Ex. 21.) Petitioner sought review, which the Commissioner of the Washington Supreme Court denied. (*Id*., Exs. 22-23.) Petitioner moved to modify the Commissioner's ruling and the motion was denied without comment on April 1, 2020. (*Id*., Exs. 24-25.) The certificate of finality issued on April 10, 2020. (*Id*., Ex. 26.)

## DISCUSSION

Petitioner raises two grounds for relief: ineffective assistance of trial counsel and ineffective assistance of appellate counsel. (Dkt. 4.) Respondent asserts that the Court need not determine whether petitioner exhausted either of these claims because this matter is properly dismissed as time-barred under 28 U.S.C. § 2244(d). (Dkt. 9.) In a response, petitioner again argues his ineffective assistance of counsel claims and denies his claims are procedurally barred. (Dkt. 10.) The Court, for the reasons set forth below, agrees with respondent the petition is untimely under § 2244(d) and concludes the petition should be denied and this action dismissed.

A.   Statute of Limitations

Pursuant to 28 U.S.C. § 2244(d)(1), a one-year statute of limitations applies to § 2254

REPORT AND RECOMMENDATION
PAGE - 4

habeas actions. That period of limitation runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The period of limitation usually commences when the criminal judgment becomes final under state law; specifically "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" § 2244(d)(1)(A).

The period of direct review ordinarily includes the ninety days in which a petitioner may file a petition for writ of certiorari with the United States Supreme Court, whether or not such a petition is actually filed. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999); *see also* Sup. Ct. Rule 13(1). However, if a petitioner fails to seek direct review from the highest state court, the conviction becomes final when the time for seeking such review elapses. *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001). In Washington, a petitioner has thirty days to seek review by the Supreme Court of an opinion by the Court of Appeals affirming a judgment and sentence on direct review. Wash. RAP 13.4(a). As such, the end of this thirty-day period marks the expiration of the time for seeking review pursuant to § 2244(d)(1)(A). *Wixom*, 264 F.3d at 898.

In this case, the Court begins the analysis of plaintiff's statute of limitations from the April

2016 judgment and sentence under which he is being held in custody.[1] Petitioner appealed from his 2016 judgment and sentence to the Washington Court of Appeals and that court affirmed the judgment and denied the motion for reconsideration on March 16, 2018. (Dkt. 10, Exs. 14 & 16.) Petitioner had thirty days from the court's denial of his motion for reconsideration to seek review by the Washington Supreme Court. RAP 13.4(a). The thirtieth day fell on a Sunday and petitioner had until the next court day, April 16, 2018, to seek review. Because petitioner did not seek review, the period of direct review concluded, the judgment and sentence became final on April 16, 2018, and the federal statute of limitations began to run from that date.

The one-year limitations period for filing a § 2254 action is tolled for any "properly filed" collateral state challenge to the pertinent judgment or claim. 28 U.S.C. § 2244(d)(2). Petitioner's statute of limitations ran for 331 days, until March 14, 2019, when petitioner filed his personal restraint petition. (Dkt. 10, Ex. 18.) That petition ceased pending on April 10, 2020, when the Washington Court of Appeals issued a certificate of finality. (*Id.*, Ex. 26); *Phongmanivan v. Haynes*, 195 Wn.2d 309, 314-17 (2020) ("The date of issuance of the certificate of finality by the clerk of the appropriate appellate court establishes the date of finality for a PRP or other state

---

[1] As respondent observes, the date of the revised judgment and sentence and not the later revision to the restitution amount controls. *See United States v. Gilbert*, 807 F.3d 1197, 1201 (9th Cir. 2015) ("We hold that when a judgment imposes a sentence but leaves the amount of restitution to be determined, the one-year statute of limitations to file a § 2255 motion does not restart when the specific amount of restitution is later entered."), and *Colbert v. Haynes*, 954 F.3d 1232, 1236-37 (9th Cir. 2020) (finding, in a § 2254 proceeding, the entry of an order removing a restitution obligation, issued after the judgment and sentence, did not constitute a new judgment). *See also Chamblee v. Florida*, 905 F.3d 1192, 1195-98 & n.5 (11th Cir. 2018) (a vacated fine "had no effect" on the judgment authorizing a petitioner's detention because, "[u]nder the federal habeas statute, . . . a state habeas petitioner may challenge only the state-court judgment 'pursuant to' which the petitioner is being held 'in custody[,]'" and the only "'judgment that matters for purposes of [§] 2244 is "the judgment authorizing the prisoner's confinement."'") (quoted source omitted), and *Osbourne v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1261, 1266 (11th Cir. 2020) (state court "'ameliorative changes in sentences ... , such as the removal of a fine or a restitution obligation,'" does not result in a new judgment for purposes of federal habeas review) (quoted sources omitted).

REPORT AND RECOMMENDATION
PAGE - 6

collateral proceeding.")  The statute of limitations then ran for an additional thirty-four days, for a total of 365 days, until its expiration on May 14, 2020.  Petitioner filed his habeas petition on July 21, 2020, more than two months after his statute of limitations had expired.  His petition is therefore untimely and subject to dismissal.

B.  <u>Equitable Tolling</u>

The statute of limitations is subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).  Equitable tolling is available "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of his untimeliness."  *Laws*, 351 F.3d at 922 (internal quotation marks and quoted source omitted).  To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  In other words, equitable tolling may be appropriate when external forces, rather than petitioner's lack of diligence, prevent timely filing.  *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).

Petitioner denies his claims are barred, but does not establish or even identify any possible basis for equitable tolling.   That is, neither his petition, nor his response to the answer shows he had been pursuing his rights diligently and some extraordinary circumstance stood in his way and prevented the timely filing of a petition.  (*See* Dkt. 4 at 33-35 and Dkt. 12 at 26.)  Because petitioner filed his petition outside of the § 2254 statute of limitations period and because he does not demonstrate his entitlement to tolling of the limitations period, his petition is time-barred.

CONCLUSION

Petitioner's habeas petition is time-barred under 28 U.S.C. § 2244(d).  The Court

REPORT AND RECOMMENDATION
PAGE - 7

recommends the petition be DENIED and this case DISMISSED. An evidentiary hearing is not required as the record conclusively shows petitioner is not entitled to relief. A proposed Order accompanies this Report and Recommendation.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, petitioner is not entitled to a COA with respect to his claims.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be

/ / /

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE - 8

ready for consideration by the District Judge on **January 8, 2021**.

DATED this 11th day of December, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 9